| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>---------------------------------------------------------X<br>KAREN GREEN DOWLING,<br><br>                       Plaintiff,<br><br>          -against-<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>                      Defendant.<br>---------------------------------------------------------X | **FILED**<br>**CLERK**<br>12:22 pm, Jan 18, 2018<br>**U.S. DISTRICT COURT**<br>**EASTERN DISTRICT OF NEW YORK**<br>**LONG ISLAND OFFICE**<br><br><br>**MEMORANDUM OF**<br>**DECISION & ORDER**<br>16-cv-4784 (ADS) |

**APPEARANCES:**

**Sharmine Persuad**
*Attorney for the Plaintiff*
P.O. Box 283
Massapequa, NY 11758
       By:    Sharmine Persuad, Esq., Of Counsel

**United States Attorney's Office for the Eastern District of New York**
*Attorneys for the Defendant*
271 Cadman Plaza East
Brooklyn, NY 11201
       By:    Candace S. Appleton, Assistant United States Attorney

**SPATT, District Judge**:

On August 25, 2016, the plaintiff, Karen Green Dowling ("Dowling," the "Plaintiff" or the "Claimant"), commenced this appeal pursuant to the Social Security Act, 42 U.S.C. § 405 *et seq.* (the "Act"), challenging a final determination by the defendant, Nancy A. Berryhill, the Acting Commissioner of the Social Security Administration (the "Defendant" or the "Commissioner"), that she is ineligible to receive Social Security disability insurance benefits.

Presently before the Court are the parties' cross motions, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(c) for a judgment on the pleadings. For the reasons

1

that follow, the Plaintiff's motion is denied in its entirety, and the Defendant's motion is granted in its entirety.

The Court notes that the Plaintiff's briefing papers use footnotes, which are contrary to this Court's Individual Rule II.A. Notwithstanding these infractions, the Court will consider the Plaintiff's papers in rendering its decision. However, the Court advises the Plaintiff's counsel that any future filings that contain footnotes will not be considered by this Court.

## I. BACKGROUND

On May 19, 2013, the Plaintiff applied for disability insurance benefits under the Act, alleging that she has been disabled since April 30, 2013. The Plaintiff claims that she is disabled due to neck and shoulder pain.

Her claim was denied on July 29, 2013, and she requested a hearing. The Plaintiff appeared with counsel before Administrative Law Judge April M. Wexler (the "ALJ") on September 15, 2014. On October 8, 2014, the ALJ issued a written decision in which she found that the Plaintiff was not entitled to disability benefits under the Act.

The Plaintiff sought a review by the Appeals Council, which denied her request on July 18, 2016. The ALJ's decision became the final decision of the Commissioner upon the Appeals Council's denial of the Plaintiff's request for review.

On August 25, 2016, the Plaintiff filed the instant action. The parties submitted the matter as fully briefed to the Court on May 8, 2017.

For purposes of these motions, familiarity with the underlying administrative record is presumed. The Court's discussion of the evidence will be limited to the specific challenges and responses presently raised by the Plaintiff and the Defendant. In this regard, references to the record are denoted as "R."

## II. DISCUSSION

### A. The Standard For Benefits Under The Act

The Act defines the term "disability" to mean an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person may only be disabled if his, "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner is required to apply the five-step sequential process promulgated by the Social Security Administration, set forth in 20 C.F.R. § 404.1520. *Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir. 1999). The Claimant bears the burden of proving the first four steps, but the burden shifts to the Commissioner at the fifth step to prove that the Claimant is capable of working. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008); *Rosa,* 168 F.3d at 77. *See also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) ("If the claimant satisfies her burden of proving the requirements in the first four steps, the burden then shifts to the [Commissioner] to prove in the fifth step that the claimant is capable of working."). "If at any step a finding of disability or non-disability can be made, the [Social Security Administration] will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24, 124 S. Ct. 376, 379, 157 L. Ed. 2d 333 (2003).

> Under the five-step sequential evaluation process, the decision-maker decides:
>
> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity"

assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); 20 C.F.R. §§ 404.1520, 416.920. When conducting this analysis, the ALJ must consider the objective medical facts; the diagnoses or medical opinions based on these facts; the subjective evidence of pain and disability; and the claimant's age, background, education and work experience. *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam).

**B. The Standard Of Review**

"Judicial review of the denial of disability benefits is narrow" as "[t]he Court will set aside the Commissioner's conclusions only if they are not supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Koffsky v. Apfel*, 26 F. Supp. 2d 475, 478 (E.D.N.Y. 1998) (Spatt, J.) (citing *Bubnis v. Apfel*, 150 F.3d 177, 179-81 (2d Cir. 1998)); *accord Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); 42 U.S.C. § 504(g). *See also Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."); *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (describing review of the Commissioner's decision as a requiring "two levels of inquiry"). The ALJ is required to set forth those crucial factors used to justify his or her findings with sufficient particularity to allow the district court to make a determination regarding the existence of substantial evidence. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Accordingly, "the reviewing court does not decide the case *de novo*." *Pereira v. Astrue*, 279 F.R.D. 201, 205 (E.D.N.Y. 2010) (citing *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir.

2004)). Rather, "the findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive," *id*. (citing 42 U.S.C. § 405(g)), and therefore, the relevant question is not "whether there is substantial evidence supporting the [claimant's] view." Instead, the Court "must decide whether substantial evidence supports *the ALJ's decision.*" *Bonet v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (emphasis in original).

In this way, the "substantial evidence" standard is "very deferential" to the Commissioner, and allows courts to reject the ALJ's findings "'only if a reasonable factfinder would *have to conclude otherwise.*'" *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)). This deferential standard applies not only to factual determinations, but also to "inferences and conclusions drawn from such facts." *Pena v. Barnhart*, No. 01-cv-502, 2002 WL 31487903, at *7 (S.D.N.Y. Oct. 29, 2002) (citing *Levine v. Gardner*, 360 F.2d 727, 730 (2d Cir. 1966)).

"Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Burgess v. Astrue*, 537 F.3d 117, 127-28 (2d Cir. 2008) (quoting *Halloran*, 362 F.3d at 31); *accord Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S. Ct. 456, 464, 95 L. Ed. 456 (1951)).

An ALJ's findings may properly rest on substantial evidence even where he or she fails to "recite every piece of evidence that contributed to the decision, so long as the record 'permits [the

5

Court] to glean the rationale of an ALJ's decision.'" *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (summary order) (quoting *Mongeur*, 722 F.2d at 1040). This remains true "even if contrary evidence exists." *Mackey v. Barnhart*, 306 F. Supp. 2d 337, 340 (E.D.N.Y. 2004) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998)).

The Court is prohibited from substituting its own judgment for that of the Commissioner, even if it might understandably have reached a different result upon a *de novo* review. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982); *Koffsky*, 26 F. Supp. at 478 (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)).

**C. Application To The Facts Of This Case**

The Plaintiff contends that the ALJ erred in four ways: (1) the ALJ incorrectly assessed the medical evidence in violation of the treating physician's rule; (2) the ALJ improperly evaluated the Plaintiff's credibility; and (3) the ALJ did not meet her burden of establishing that there was work in the national economy that the Plaintiff could perform. The Court will address each of these issues in turn.

**1. As To Whether The ALJ Followed The Treating Physician Rule**

**a. As To Whether The ALJ Properly Accorded "Little Weight" To Dr. Finuoli's Opinion**

As mentioned above, the Plaintiff argues that the ALJ committed error by selectively citing from the administrative record to conclude that Dr. Anthony Finuoli's opinion was entitled to little weigh in violation of the treating physician rule.

Under the treating physician rule, the opinion of a claimant's treating physician as to the nature and severity of the claimant's impairments is given "controlling weight," so long as it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Green-Younger v. Barnhart*,

6

335 F.3d 99, 106 (2d Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2)); *Bonneau v. Astrue*, No. 5:13-cv-26, 2014 WL 31301, at *5 (D. Vt. Jan. 3, 2014). Although, the Court is generally required to defer to the medical opinion of a treating physician, *see Schisler v. Sullivan*, 3 F.3d 563, 567-68 (2d Cir. 1993), those findings may not be accorded controlling weight if they are inconsistent with other substantial evidence, including the opinions of other medical experts. *Burgess*, 537 F.3d at 128.

The ALJ must consider the following factors if it decides to afford less than controlling weight to a treating physician's opinion: "(1) the frequently, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (citing *Burgess*, 537 F.3d at 129).

In the Second Circuit, the ALJ is required to "give good reasons in [her] notice of determination or decision for the weight [she] gives [a claimant's] treating source's opinion." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (internal citations omitted). The ALJ is not required to cite each factor explicitly in its decision, but must ensure it applies the substance of the rule. *Halloran*, 362 F.3d at 32. The ALJ cannot substitute "[her] own assessment of the relative merits of the objective evidence and subjective complaints for that of the treating physician." *Garcia v. Barnhart*, No. 01-cv-8300, 2003 WL 68040, at *7 (S.D.N.Y. Jan. 7, 2003).

It is entirely proper for the ALJ to only credit portions of medical source opinions, or weigh different parts of the same opinion differently. *Id*; *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). However, when the ALJ uses a portion of a given opinion to support a finding, while rejecting another portion of that opinion, the ALJ must have a sound reason for the discrepancy. *See Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983) ("Although we do not

require that, in rejecting a claim of disability, an ALJ must reconcile explicitly every conflicting shred of medical testimony, we cannot accept an unreasoned rejection of all the medical evidence in the claimant's favor." (internal citations omitted)).

In the instant case, ALJ Wexler assigned "little weight" to the opinion of Dr. Finuoli. *See* R. at 27-28. Anthony L. Finuoli, D.O. is an orthopedic surgeon and one of the Plaintiff's treating physicians. ALJ Wexler determined in relevant part that:

> Little weight is given to the opinions of Dr. Finuoli, particularly because they are inherently inconsistent, and also inconsistent with each other. Initially, at the claimant's alleged onset date in April 2013, Dr. Finuoli stated that the claimant should be kept on restricted duty and in the alternative, should retire and never perform the full duties of a police officer. In his report in February 2014, the doctor again stated that the claimant should not perform the duties of a police officer and should avoid vibration and jostling-type movements. However, in a contemporaneous report, Dr. Finuoli significantly restricted the claimant's functioning, even to the point that she should only work in an environment with library-like quiet. There is nothing in his previous reports or treatment notes that would indicate a need for such significant limitations. The diagnostic evidence does not support these limitations, and there is an indication that the claimant's conditions improved with recent conservative treatment. Moreover, the doctor placed these restrictions on the claimant as of August 2012, a time during which she was performing light duty work as a police officer without any apparent difficulty until her alleged onset date of April 30, 2013, nearly a year later. In addition, the claimant's own testimony indicates that she maintains a tolerance for a greater level of activity than that assessed by Dr. Finuoli. The claimant stated that she remains able to drive, performs chores around the house, goes out to dinner with a friend and attends her daughter's cheerleading events, which would likely not be performed in a library quiet environment.

R. at 27-28. The Plaintiff takes issue with this portion of the ALJ's ruling.

The Plaintiff claims that Dr. Finuoli's opinions were improperly accorded an incorrect weight. The decision to assign controlling weight to a treating physician's opinion is proper as long as it is supported by medically acceptable diagnostic techniques and is consistent with substantial evidence in the record. Here, the ALJ properly accorded the opinions of Dr. Finuoli "limited weight."

The ALJ gave limited weight to the opinions of Dr. Finuoli primarily for two reasons. First, the opinions were internally inconsistent and inconsistent with the balance of the medical evidence. *See* R. at 27. In a particularly glaring instance, Dr. Finuoli opined that the Plaintiff's condition required a noise level akin to a library. R. at 391.

This was a proper application of the third factor, the medical opinion's consistency with the record as a whole, to the instant facts. *See* 20 C.F.R. § 404.1527(c)(3)-(4) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. … Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). This determination by the ALJ is supported by substantial evidence, as an evaluation of the record reveals inconsistencies with other aspects of the administrative record. *See, e.g.*, R. at 27.

This was also a proper application of the second factor, "the amount of medical evidence supporting the opinion." *Selian*, 708 F.3d at 418; *accord Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015). The ALJ's examination of the inconsistencies between the opinions of the Dr. Finuoli and other medical evidence constitutes explicit consideration of the amount of medical evidence supporting the ALJ's opinion.

Second, ALJ Wexler concluded that the Claimant's own testimony contradicted the limitations mentioned by Dr. Finuoli. R. at 27-28. This rationale was also an appropriate application of the third factor under the regulations. *See* 20 C.F.R. § 404.1527(c)(3)-(4) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. … Generally, the more consistent a medical opinion is with the record as a whole, the more weight

9

we will give to that medical opinion."). It is supported by substantial evidence, as an evaluation of the record reveals inconsistencies between the testimony of Dr. Finuoli and the Claimant. *See, e.g.*, R. at 25-26, 59-66, 153-157, 427.

Attempting to challenge ALJ Wexler's residual functional capacity ("RFC") conclusions, the Plaintiff argues that there is evidence in the administrative record that supports Dr. Finuoli's opinion. However, whether or not there is substantial evidence that may support an alternative conclusion by the ALJ is irrelevant. If the ALJ's decision is supported by substantial evidence, the inquiry is completed. "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (quoting *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)). Here, as the ALJ's conclusions regarding Dr. Finuoli's medical opinion are supported by substantial evidence, the existence of support to alternative findings is superfluous.

The Plaintiff also seeks to challenge the ALJ's RFC conclusion by asserting that the decision lacks any supporting medical evidence. As discussed above, substantial evidence, including portions of the opinions of Drs. Mullins and Finuoli, support the ALJ's RFC finding. While under 20 C.F.R. § 404.1527(c), an ALJ is required to weigh and evaluate "every medical opinion," there is no requirement that an opinion be assigned a *particular weight*. *See, e.g. Williams v. Colvin*, No. 16-cv-2293, 2017 WL 3701480, at *9 (E.D.N.Y. Aug. 25, 2017) (Spatt, J.) (holding that the ALJ did not err in refusing to assign controlling weight to any of the plaintiff's treating physicians).

While the Plaintiff asserts that the ALJ's failure to order a consultative examination requires remand, "[a]s with development of the record generally, 'a consultative examination is

unnecessary if the record contains sufficient information on which to base the decision.'" *Colon-Torres v. Colvin*, No. 6:12-cv-1591, 2014 WL 296845, at *2 (N.D.N.Y. Jan. 27, 2014) (quoting *Hall ex rel. M.M. v. Astrue*, No. 11-cv-6317, 2012 WL 2120613, at *4 (W.D.N.Y. June 11, 2012)). Here, the Court finds that the record contained sufficient evidence regarding the Plaintiff's conditions, and the ALJ had the necessary information required to make her decision. Further, the Court finds that the record before the ALJ did not require a consultative examination. *See, e.g.*, *Monroe v. Comm'r of Soc. Sec.*, No. 5:15-cv-1235, 2016 WL 7971330, at *3 (N.D.N.Y. Dec. 29, 2016) ("[T]he ALJ is not required to order a consultative examination if the facts do not warrant or suggest the need for it." (internal citations omitted)) *adopted by Monroe v. Colvin*, No. 15-cv-1235, 2017 WL 318838 (N.D.N.Y. Jan. 23, 2017); *Colvin v. Astrue*, No. 09-cv-946, 2011 WL 3047713, at *3 (W.D.N.Y. July 25, 2011).

### b. **As To Whether The ALJ Mischaracterized The Record**

Furthermore, the Plaintiff attempts to discredit the ALJ's RFC conclusion by accusing ALJ Wexler of mischaracterizing the record. *See* Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings ("Plaintiff's Memo.") at 14-17. An examination of the administrative record reveals that any alleged inconsistencies between the record itself and the ALJ's associated representations are merely harmless error, as the ALJ's findings, as they pertain to Dr. Finuoli, are supported by substantial evidence. *See Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 82 n.26 (N.D.N.Y. 2005); *see also Moe v. Colvin*, No. 15-cv-347, 2017 WL 6379239, at *5 (W.D.N.Y. Dec. 14, 2017).

First, the Plaintiff's allegation that "the ALJ's finding that Dr. Finuoli recommended restricted duty at the time of onset date is incorrect. The record shows that Ms. Dowling's alleged onset date of April 30, 2013 corresponds with Dr. Finuoli's recommendation of 'retirement from

police depart[ment] due to work-related injury to neck/rt. shoulder.'" Plaintiff's Memo. at 14. While the Plaintiff is correct that Dr. Finuoli recommended retirement on April 30, 2013 from Dowling's current position with the police department, *see* R. at 259, 397, Dr. Finuoli suggested that the Plaintiff "continue restricted duty" on April 11, 2013. R. at 398. This was a mere 19 days from the alleged date of onset, April 30, 2013. The close proximity of the two visits reveal the harmlessness of such an error.

Next, Dowling alleges that ALJ Wexler's statements regarding her conservative treatment were inaccurate. While the Plaintiff's improvement during the course of her treatment was not entirely consistent, the Court finds that there is substantial evidence that "the [C]laimant's conditions improved with recent conservative treatment." R. at 27-28. The existence of conflicting evidence is irrelevant, as substantial evidence supporting the ALJ's decision is present.

Lastly, the Plaintiff alleges that the ALJ misstated her testimony regarding her daily activities and her subjective complaints of pain. *See* Plaintiff's Memo. at 16-17. Specifically, Dowling claims that the ALJ was incorrect in stating that Dowling encountered no "apparent difficulty" during the course of her light duty work, from August 2012 until April 2013 and reiterated that her "testimony r[e]garding her activities, when considered as a whole, is not inconsistent with Dr. Finuoli's findings, as the ALJ claimed." *Id*. at 17.

However, it is the ALJ's responsibility to resolve conflicts in the administrative record. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("[The ALJ] was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *Byrne v. Berryhill*, -- F. Supp. 3d --, No. 16-cv-3134, 2018 WL 317842, at *4 (E.D.N.Y. Jan. 5, 2018) (Spatt, J.) ("In order for the Court to determine whether a treating physician's opinion is consistent with other substantial evidence in the administrative record, the

Court must keep in mind that 'genuine conflicts in the medical evidence are for the ALJ to resolve.'" (quoting *Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010))); *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 204 (N.D.N.Y. 2012); *McGowan v. Astrue*, No. 07-cv-2252, 2009 WL 792083, at *8 (E.D.N.Y. Mar. 23, 2009). As discussed in Section II.C.2., evaluating the credibility of the Plaintiff is the province of the ALJ. *See Fishburn v. Sullivan*, 802 F. Supp. 1018, 1023-24 (S.D.N.Y. 1992). It is entirely proper for the ALJ to reject or discount claims of pain after weighing the objective medical evidence in the administrative record. *See Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999). Further, an examination of the administrative record reveals that substantial evidence supports the ALJ's conclusions regarding the Plaintiff's testimony. *See* Section II.C.2.

    c. **As To Whether The ALJ Failed To Address The Factors Required By The Regulations**

The Plaintiff lastly argues that the ALJ failed to discuss the factors required by the regulations and set forth in 20 C.F.R. § 404.1527(c)(2). However, the Court finds that the ALJ complied with the substance of the treating physician rule. *See Halloran*, 362 F.3d at 32; *Reyes v. Colvin*, No. 13-cv-4683, 2015 WL 337483, at *16 (S.D.N.Y. Jan. 26, 2015) ("Although the ALJ is required to explicitly consider all of the factors, the ALJ is not required to explicitly 'address or recite' each factor in [her] decision." (internal citations omitted)); *Duval v. Colvin*, No. 6:13-cv-495, 2014 WL 4637092, at *12 (N.D.N.Y. Sept. 16, 2014) ("[T]here is no requirement to recite and discuss each and every factor slavishly[.]").

Here, the facts in the administrative record, together with the ALJ's explanation of her decision demonstrate a proper application of the treating physician rule as applied to the Plaintiff. *See Marquez v. Colvin*, No. 12-cv-6819, 2013 WL 5568718, at *12 (S.D.N.Y. Oct. 9, 2013)

("Although the ALJ did not explicitly recite the factors, his decision nonetheless adequately considered each factor[.]").

**2. As To Whether The ALJ Properly Evaluated The Plaintiff's Credibility**

The Plaintiff states that the ALJ's decision failed to properly evaluate the Claimant's subjective complaints of pain and their impact on her RFC. Evaluating the credibility of the Claimant is the province of the ALJ. *See Fishburn*, 802 F. Supp. at 1023-24. This is primarily due to the inherent difficulty in evaluating the credibility of a witness from a secondhand perspective.

The ALJ is required to conduct a two-step analysis to consider the extent to which subjective evidence of symptoms can reasonably be accepted as consistent with medical and other evidence from the administrative record. *Brownell v. Comm'r of Soc. Sec.*, No. 05-cv-0588, 2009 WL 5214948, at *3 (N.D.N.Y. Dec. 28, 2009); *see also* 20 C.F.R. § 404.1529. First, the ALJ must consider whether the medical evidence reveals any impairment "which could reasonably be expected to produce the pain or other symptoms alleged[.]" 20 C.F.R. § 404.1529(a). "Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work." *Crouch v. Comm'r of Soc. Sec.*, No. 6:01-cv-0899, 2003 WL 22145644, at *10 (N.D.N.Y. Sept. 11, 2003) (citing 20 C.F.R. §§ 404.1529(c), 416.929(c)). If, on the other hand, the objective medical evidence does not substantiate the alleged injuries, the ALJ must assess the credibility of the Claimant's testimony in the context of the case record as a whole. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii). Here, ALJ Wexler properly applied the above two-step analysis. *See* R. at 25-26.

First, the Plaintiff contends that, "[the ALJ's] findings are … based on a selective citation to or, in some cases, an actual misstatement of the evidence of record[.]" Where subjective symptoms are at issue, "the ALJ has discretion to evaluate the credibility of the claimant and to arrive at an independent judgment, in light of the medical findings and other evidence, regarding the true extent of the pain alleged." *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987).

In the Second Circuit, "[a]n [ALJ] may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must [do so explicitly and] set forth his or her reasons with sufficient specificity to enable [the district court] to decide whether the determination is supported by substantial evidence." *Lewis*, 62 F. Supp. 2d at 651 (internal citations and quotation marks omitted); *accord Fishburn*, 802 F. Supp. at 1027-28. The ALJ may consider seven factors relevant to a claimant's symptoms:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3)(i)-(viii). The ALJ, however, is not required to discuss all seven factors as long as the decision "includes precise reasoning, is supported by evidence in the case record, and clearly indicates the weight the ALJ gave to the claimant's statements and the reasons for that weight." *Felix v. Astrue*, No. 11-cv-3697, 2012 WL 3043203, at *8 (E.D.N.Y. July 24, 2012) (citing *Snyder v. Barnhart*, 323 F. Supp. 2d 542, 546-47 & n.5 (S.D.N.Y. 2004)).

In the instant case, ALJ Wexler properly explained why she determined that the Claimant's credibility was limited. This decision was based on an evaluation of the entire record, including

15

careful examination of the Claimant's testimony. Specifically, the ALJ noted that her regular activities were inconsistent with her complaints. *See Perez v. Barnhart*, 440 F. Supp. 2d 229, 234-35 (W.D.N.Y. 2006) ("[T]he ALJ also properly relied in part on the testimony concerning plaintiff's daily activities, which was some evidence of plaintiff's physical capabilities." (collecting cases)); *Petti v. Colvin*, No. 13-cv-267, 2014 WL 6783703, at *10 (E.D.N.Y. Dec. 2, 2014) ("In assessing the claimant's credibility, the ALJ must consider … various regulatory factors including the claimant's daily activities[.]"). "The claimant reported … that she is able to engage in a wide range of daily activities. She stated that she drives locally, goes food shopping, does laundry (but does not carry it downstairs), cleans and is able to cook." R. at 25. She is also able to travel to her daughter's events and on family vacations, albeit with discomfort. *See* R. at 25.

ALJ Wexler also mentioned that Dowling's conservative treatment of her symptoms is inconsistent with the medical records. *See id*. at 25. Of importance, she no longer attends physical therapy and does not take pain medication for her neck and shoulder injuries. The Court finds that the Plaintiff's conservative treatment regimen also indicates that she is not as restricted as she asserts. *See Church v. Colvin*, 195 F. Supp. 3d 450, 456-57 (N.D.N.Y. 2016); *Lovell v. Colvin*, 137 F. Supp. 3d 347, 354 (W.D.N.Y. 2015); *Cahill v. Colvin*, No. 12-cv-9445, 2014 WL 7392895, at *14 (S.D.N.Y. Dec. 29, 2014).

Therefore, the Court holds that the ALJ's findings regarding the Plaintiff's subjective complaints are supported by substantial evidence.

3. **As To Whether The ALJ's Finding At Step V Is Based On Substantial Evidence**

The Plaintiff lastly contends that the ALJ erred in finding that there is other work in the national economy that Dowling could perform. Specifically, the Plaintiff argues that the

hypothetical questioning used to determine other potential positions of employment was based on a flawed RFC determination. This, the Plaintiff claims, taints the vocational expert's analysis.

At the final step, the ALJ must determine whether the claimant can be employed in other, less demanding work in the national economy. *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c). To make that determination, the ALJ may rely on an RFC assessment in questioning a vocational expert as long as the assessment is based on substantial evidence. *See Mancuso v. Astrue*, 361 F. App'x 176, 179 (2d Cir. 2010). This is in addition to the claimant's education, age, previous work experience, and the transferability of his or her skills. *See* 20 C.F.R. § 404.1520(g).

As this Court has already held that substantial evidence supports ALJ Wexler's RFC determination, the Court rejects the instant argument. *See Wavercak v. Astrue*, 420 F. App'x 91, 95 (2d Cir. 2011) ("Because we have already concluded that substantial record evidence supports the RFC finding, we necessarily reject [the claimant's] vocational expert challenge."); *Pardee v. Astrue*, 631 F. Supp. 2d 200, 212 (N.D.N.Y. 2009) (holding that the hypothetical posed to the vocational expert was supported by substantial evidence). Therefore, the ALJ's finding that there are a significant number of jobs in the national economy that the Plaintiff can perform is supported by substantial evidence.

### III. CONCLUSION

Accordingly, for the reasons stated above, the Plaintiff's motion for judgment on the pleadings pursuant to Rule 12(c) is denied in its entirety, and the Defendant's motion for judgment on the pleadings dismissing the complaint is granted.

The Clerk of the Court is respectfully directed to close this case.

It is **SO ORDERED:**

Dated: Central Islip, New York

January 18, 2018

                                                */s/ Arthur D. Spatt*

                                                ARTHUR D. SPATT

                                                United States District Judge